This matter was first reviewed by the Full Commission on 18 February 1998, which filed its initial Opinion and Award on 23 April 1998. The Full Commission's Opinion and Award was affirmed in part and remanded in part by the North Carolina Court of Appeals, which certified its opinion to the Commission on 24 May 1999, on the issue of whether or not defendants were prejudiced by delayed notice of plaintiff's injury. Thereafter, defendants filed a Petition for Discretionary Review with the North Carolina Supreme Court, which was denied on 19 August 1999.
The Full Commission has now reviewed the evidence of record, its prior Opinion and Awards and the parties' 5 January 2000 Stipulation. Having reconsidered the evidence of record, the Full Commission has AMENDED its 3 December 1999 Opinion and Award pursuant to this stipulation on the issue of temporary partial disability. Further, the Full Commission finds that good grounds have been shown in support of Plaintiff's Motion and said motion is hereby GRANTED, in part. The remainder of the Full Commission's 3 December 1999 Opinion and Award remains unchanged.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated 25 September 1996, at the hearing on 24 September 1996, subsequent to the hearing and on 5 January 2000 as:
 STIPULATIONS
1. On or about 15 November 1993, an employer-employee relationship existed between plaintiff and defendant-employer.
2. On or about 15 November 1993 while plaintiff was employed by defendant-employer, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
3. On or about 15 November 1993, defendant-employer was insured for workers' compensation by the defendant-carrier, Home Insurance Company.
4. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. The parties have been correctly designated and there is not a question as to misjoinder or nonjoinder of parties.
6. The parties, through counsel, stipulated a packet of medical records into evidence without the need for further authentication or verification. These records include records from the following:
— Raleigh Neurological Clinic, Inc.,
— Carolina Chiropractic Clinic,
— Wake Medical Center,
— Pinehurst Surgical Clinic, and
— Moore Regional Hospital.
7. The parties, through counsel, stipulated into evidence without the need for further authentication or verification the following:
— Stipulated Exhibit 1, Pelican Employee Profile,
— Stipulated Exhibit 2, Long Term Disability Claim, Employer's Statement;
— Stipulated Exhibit 3, Employee Payroll Information; and
— Stipulated Exhibit 4, a 19 December 1995 letter from Bill Murray to John Cuff.
8. Plaintiff was employed with Lowe's Companies, Inc. during the period of 2 April 1996 through 26 August 1996. During such time plaintiff earned an average weekly wage of $264.54 per week. Based upon his average weekly wage at the time of his injury on 15 May 1993 of $626.92, there was a wage difference of $362. 38 for the period plaintiff worked at Lowe's.
9. Plaintiff is entitled to two-thirds (2/3) the difference between these wages, or a temporary partial compensation rate of $241.70 for twenty-one (21) weeks, for a total of $5,075.70.
***********
 RULINGS ON EVIDENTIARY MATTERS
All objections raised during the depositions of Dr. Robin Koeleveld and Dr. Malcom Shupeck are ruled upon in accordance with the law and Opinion and Award rendered in this matter.
***********
Based upon the record of evidence, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a forty-two year old male with a high school education and two years of college equivalence. Prior to becoming employed with defendant-employer, plaintiff had been in the building supply business for approximately twenty-five years. In October 1993, plaintiff began working for defendant-employer in contract sales. He solicited business, figured amounts of materials for jobs and visited job sites. His duties required him to drive around during the day making calls on local contractors and visiting local job sites connected with the sale of building materials. Also on occasion, as the defendant-employer was a fledgling business, plaintiff had to pitch in and help load a truck or do other odd jobs. Plaintiff was hired in October 1993 at a yearly salary of $35,000.00, $2,400.00 of which was allotted as a $200.00 per month car allowance. This salary was to be guaranteed for a period of six months and then plaintiff was to be paid subject to a commission.
2. On 15 May 1993, late in the day, after the regular work day had ended, plaintiff and two other employees of defendant-employer went out the back steps of defendant-employer's business location. These steps were narrow and there was a large wooden beam which was propped over them. It was determined that the beam should be moved to avoid injury. The beam was approximately thirteen inches wide, eight inches deep and eight feet long, weighing approximately five hundred pounds. Plaintiff's end of the beam was propped up on the steps. Plaintiff had to steady it at approximately waist high as the two other employees picked up the other end. As they moved the beam approximately eight to ten feet, plaintiff had to squat to drop his end of the beam. At the time he lowered the beam, he felt a pull in his back and pain went down into his buttock and left leg. The other employees who were lifting the beam were Jere McKeithan, a fellow employee and Wilson Mishoe, who was the manager at defendant-employer's facility at the time. As plaintiff lowered the beam and felt immediate pain, he exclaimed and said that he thought he had strained his back.
3. Plaintiff's pain remained constant the next day, but the plaintiff assumed that he had just strained his back and continued to work. Eventually plaintiff's symptoms worsened to the point that he could not sit down and was unable to drive a car and push the clutch. Plaintiff was experiencing pain in his lower back and down his left leg. Plaintiff complained to Mr. Mishoe about his back pain as Mr. Mishoe was the manager at the time.
4. Plaintiff first sought medical attention from Dr. John T. Tierney with Carolina Chiropractic Clinic on 17 November 1993. At that time he reported that he had been suffering pain in his lower back and left hip area with pain radiating down his left leg. Plaintiff continued to see Dr. Tierney several times: however, his back pain continued to increase over the next several weeks to the point where he had difficulty sitting down and could not drive around calling on contractors and visiting job sites. Prior to this time, plaintiff had not had any difficulties performing these duties.
5. On 16 December and 30 December 1993, plaintiff consulted Dr. Mark Brenner, an orthopaedic surgeon with Pinehurst Surgical Clinic. Plaintiff presented to Dr. Brenner complaining of pain in his left hip, left leg and lower back indicating that he had been having back pain for approximately one year and progressive left leg pain for approximately thirty days. Dr. Brenner referred plaintiff to Dr. Malcom Shupeck, a neurosurgeon, who plaintiff first saw on 10 January 1994 presenting with leg pain secondary to back problems caused by a far lateral disc herniation and substantial degenerative disc disease in the joints in his back, particularly L4-5.
6. On 28 January 1994, plaintiff underwent a complex decompressive laminectomy and diskectomy.
7. Plaintiff remained out of work for approximately sixty days following his 28 January 1994 surgery, and his salary was continued during that time. After the plaintiff returned to work, his back symptoms were much better for the first month or two. Then he began to experience pain and was not able to function at one hundred percent. Plaintiff worked approximately six to eight months following his 28 January 1994 surgery and then he began to experience symptoms in his back similar to those he had experienced prior to his 28 January 1994 operation.
8. On 2 November 1994, plaintiff underwent a second surgery performed by Dr. Shupeck for a recurrent disc herniation. Plaintiff remained employed up to the day of his second surgery.
9. After his second surgery, on 8 November 1994, plaintiff filed an Industrial Commission Form 18 Notice of Accident to Employer with the North Carolina Industrial Commission. However, defendant-employer received actual notice of plaintiff's injury on 15 November 1993 for which plaintiff sought immediate and timely medical treatment. Therefore, plaintiff's delay in providing written notice is reasonably excused as it was reasonable for plaintiff to believe that defendant-employer was already cognizant of his injury. Furthermore, defendants were in no way prejudiced by plaintiff's delay in providing formal, written notice. Because Mr. Wilson Mishoe, who was the manager of defendant-employer's facility on 15 November 1993 was also a witness to the incident, defendants had the earliest possible opportunity to begin an investigation and to question all potential witnesses.
10. After his 2 November 1994 surgery, plaintiff essentially experienced no relief from his pain. After his second surgery on 2 November 1994, plaintiff experienced pain such that he could not perform his work duties and was unable to drive in his automobile to job sites and to call on customers.
11. After continuing to experience pain, plaintiff saw Dr. Robin Frederick Koeleveld on 25 January 1995 suffering from spinal instability at L4-5 which was directly caused by plaintiff's two prior low back operations, the laminectomy for ruptured disc at L4-5 on the left performed on 28 January 1994 which was repeated on 2 November 1994. Dr. Koeleveld performed a fusion and stabilization at L4-5 on plaintiff on 16 February 1995. After the surgery, plaintiff initially experienced relief, but experienced a gradual return of the leg pain. Plaintiff engaged in the physical therapy prescribed by Dr. Koeleveld, but did not obtain relief.
12. Plaintiff was unable to return to work between his second surgery of 2 November 1994 and his third surgery of 16 February 1995 due to his back pain.
13. Dr. Koeleveld kept plaintiff out of work after his surgery until 21 November 1995 when he gave plaintiff a twenty-five pound lifting restriction.
14. After his third surgery on 16 February 1995, plaintiff discussed with his supervisors at defendant-employer a potential return to work. When plaintiff was released to return to work with twenty-five pound weight limitation, defendant-employer indicated that it did not have any jobs available within plaintiff's restrictions.
15. After his third surgery on 16 February 1995, plaintiff's pain level diminished substantially, but he continued to be unable to sit for long periods and was able to bear his pain as long as he took his medication.
16. After several unsuccessful attempts to obtain employment, plaintiff returned to Dr. Koeleveld and requested the doctor to remove his lifting restrictions to improve his prospects of obtaining employment.
17. Subsequent to 1 April 1996, plaintiff began working at Lowe's earning $7.50 per hour. Plaintiff was employed with Lowe's Companies, Inc. during the period of 2 April 1996 through 26 August 1996. During such time plaintiff earned an average weekly wage of $264.54 per week. Based upon his average weekly wage at the time of his injury on 15 May 1993 of $626.92, there was a wage difference of $362. 38 for the period plaintiff worked at Lowe's.
18. On 15 November 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment in the form of a specific traumatic incident when he was lowering a beam and felt a sharp pain in his back and buttocks, radiating down into his left leg.
19. As a direct and proximate result of his injury by accident on 15 November 1993, plaintiff sustained a ruptured disc at L4-5 or materially aggravated his pre-existing disc condition at L4-5 causing debilitating lower back and left leg pain.
20. As the result of his 15 November 1993 injury by accident, plaintiff was unable to earn wages in his former position with defendant-employer or in any other position for the following periods, from 2 November 1994 through 1 April 1996; and subsequent to the date his employment with Lowe's ended in late August 1996 through the present and continuing.
21. As the result of his 15 November 1993 injury by accident, plaintiff was capable of earning reduced wages in his position at Lowe's from 2 April 1996 through 26 August 1996. During this period, plaintiff's average weekly wage was $241.70.
22. As a direct and proximate result of his 15 November 1993 compensable injury to his lower back, plaintiff sustained a twenty-five percent permanent partial impairment to the spine.
23. At the time of his injury by accident on 15 November 1993, plaintiff earned an average weekly wage of $626.92 yielding a compensation rate of $417.97.
24. Defendant-employer, pursuant to a non-contributory disability plan, caused to be paid to plaintiff, when such payments were not due and payable, and plaintiff received $235.50 per week before taxes during a ninety day period covering March 1995, April 1995 and May 1995.
25. This matter was appealed to the Full Commission and the North Carolina Court of Appeals by defendants, who also filed a petition for review with the Supreme Court, and is resulting in the award of benefits to plaintiff.
26. Counsel for plaintiff has filed an affidavit with the Full Commission regarding 102 hours for which he requests attorney's fees pursuant to G.S. § 97-88 in the amount of $17,850.00. The Full Commission finds counsel for plaintiff's claimed hours worked and his hourly fee to be excessive.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's failure to provide formal, written notice of the accident is reasonably excused and defendants were in no way prejudiced by this delay. G.S. § 97-22.
2. On 15 November 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a back injury as the result of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
3. As the result of his 15 November 1993 injury by accident, plaintiff is entitled to have defendants pay temporary total disability compensation benefits at the rate of $417.97 per week for the periods of 2 November 1994 through and including 1 April 1996; and subsequent to the date his employment with Lowe's ended in late August 1996 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. § 97-29.
4. As the result of his 15 November 1993 injury by accident, plaintiff is entitled to two-thirds (2/3) the difference between his average weekly wage on 15 November 1993 of $417.97 and his average weekly wage while forking for Lowe's of $241.70 for a period of twenty-one (21) weeks, for a total of $5,075.70. G.S. §97-30.
5. As the result of his 15 November 1993 injury by accident plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred. G.S. § 97-25.
6. Defendants are entitled to a credit for payments made to plaintiff over a ninety day period during March 1995, April 1995 and May 1995. G.S. § 97-42.
7. As this matter was appealed to the Full Commission and the North Carolina Court of Appeals by defendants, who also filed a petition for review with the Supreme Court, and is resulting in the award to plaintiff of benefits, plaintiff is entitled to have defendants pay $5,000.00 in attorney's fees as part of the bill of costs. This fee is in addition to the fees approved as a percentage of the compensation awarded to plaintiff herein.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $417.97 per week for the periods of 2 November 1994 through 1 April 1996 and subsequent to the date his employment with Lowe's ended in late August 1996 through the present and continuing until plaintiff returns to work or until further order of the Commission. This compensation is subject to the attorney's fee approved herein and to the credit in defendants' favor. The amount of compensation which has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff temporary partial disability compensation at the rate of $241.70 for a period of twenty-one (21) weeks, for a total of $5,075.70. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee awarded herein.
3. Defendants are entitled to a credit for payments made for ninety days during the period of March 1995, April 1995 and May 1995.
4. A reasonable attorney's fee in the amount of twenty-five percent 25% of the compensation awarded above is approved for plaintiff's counsel. From the amount of compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to plaintiff's counsel, with plaintiff's counsel receiving every fourth check payable to plaintiff thereafter.
5. Defendants shall pay for all related medical expenses incurred or to be incurred.
6. Defendants shall pay the costs, including an expert witness fee of $265.00 for Dr. Robin Koeleveld and an expert witness fee of $265.00 for Dr. Malcom Shupeck.
7. Pursuant to G.S. § 97-88, defendants shall also pay attorney's fees in the amount of $5,000.00 to counsel for plaintiff as part of the bill of costs. This fee is in addition to the fees approved as a percentage of the compensation awarded to plaintiff herein.
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER